

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

SHAWN.HIGGINS@SIDLEY.COM
+1 202 736 8020

February 19, 2026

**FILED ELECTRONICALLY**

The Honorable Gina Justice
Clerk of the Court
U.S. Court of International Trade
One Federal Plaza
New York, NY 10278-0001

    Re:   <u>*Nippon Steel Corporation v. United States*</u>, Court No. 26-00747

Dear Ms. Justice:

    Enclosed for filing in the above-captioned proceeding are the following documents for Nippon Steel Corporation:

- Complaint
- Order for Statutory Injunction Upon Consent (Form 24)

    On February 18, 2026, Plaintiff's counsel contacted Ms. Claudia Burke, counsel for Defendant, the United States, regarding consent on the Form 24. Ms. Burke consented to the Form 24 by e-mail on February 18, 2026.

    Copies of these documents are being served today on the parties listed in the attached certificate of service.

# SIDLEY

The Honorable Gina Justice
February 19, 2026
Page 2

    Please do not hesitate to contact the undersigned if you have any questions regarding this matter.

                                    Respectfully submitted,

                                    Shawn M. Higgins
                                    Rajib Pal
                                    Ashlande Gelin
                                    Lloyd Lyall
                                    Danielle V. Cossey

                                    Counsel to Nippon Steel Corporation

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| NIPPON STEEL CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 26-00747 |
| UNITED STATES | ) ) | |
| Defendant. | ) ) | |

**COMPLAINT**

Nippon Steel Corporation ("NSC") ("Plaintiff"), by its counsel, states the following claims against the Defendant, the United States:

### I.   JURISDICTIONAL STATEMENT

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under Section 516A of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. § 1516a). This action contests the *Final Results* issued by the U.S. Department of Commerce ("the Department" or "Commerce") in the first administrative review ("AR1") of the antidumping duty ("AD") order on Non-Oriented Electrical Steel ("NOES") from Japan (Case No. A-588-872) for the period December 1, 2022, through November 30, 2023 (the "period of review" or "POR"). *See Non-Oriented Electrical Steel from Japan: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 90 Fed. Reg. 59501 (Dep't of Commerce December 19, 2025) ("*Final Results*"). The Department's analysis of issues raised in the *Final Results* is contained in, *inter alia*: "Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Non-Oriented Electrical Steel from

1

Japan; 2022-2023," issued on December 15, 2025 ("Final Decision Memo"); and "Final Analysis Memorandum" re: "2022-2023 Administrative Review of the Antidumping Duty Order on Non-Oriented Electrical Steel from Japan," issued on December 15, 2025 ("Final Analysis Memo").[1]

## II.  STANDING OF PLAINTIFF

2. Plaintiff is a Japanese producer and exporter of the subject merchandise. Therefore, NSC is an interested party as defined in 19 U.S.C. § 1677(9)(A). Plaintiff participated in the administrative review that is the subject of this action, and, accordingly, has standing under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d) to bring this action.

## III.  TIMELINESS OF THIS ACTION

3. Plaintiff commenced this action by filing a summons on January 20, 2026, which was within 30 days after the date of publication of the *Final Results*.[2] Plaintiff is filing this Complaint on February 19, 2026, which is within 30 days after the date of the filing of the summons. Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A).

## IV.  STATEMENT OF THE FACTS

4. On February 8, 2024, the Department initiated AR1 of the AD order on NOES from Japan, after receiving a timely request by NSC to conduct an administrative review. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 8641,

---

[1] The Department also issued a business proprietary memorandum concurrently with the Final Decision Memo. *See* "BPI Memorandum" re: "2022-2023 Administrative Review of the Antidumping Duty Order on Non-Oriented Electrical Steel from Japan," dated December 15, 2025 ("BPI Memo").

[2] The Department's *Final Results*, which determines the date by which the summons must be filed, was published on December 19, 2025 (90 Fed. Reg. 59501). Because 30 days from December 19, 2025, fell on Sunday, January 18, 2026, and Monday, January 19, 2026, was a legal holiday (Martin Luther King Jr. Day), by operation of Rule 6 of the Rules of the U.S. Court of International Trade, the deadline to commence this action was Tuesday, January 20, 2026.

8642 (Dep't of Commerce February 8, 2024). As noted above, the POR for AR1 was December 1, 2022, through November 30, 2023.

5. On April 1, 2024, based on U.S. Customs and Border Protection ("CBP") entry data, the Department selected NSC as the sole mandatory respondent and issued its AD questionnaire to NSC. *See* Memorandum from Howard Smith, Program Manager, AD/CVD Operations, Office IV to All Interested Parties, "2022 - 2023 Administrative Review of the Antidumping Duty Order on Non-Oriented Electrical Steel form Japan: Comments on U.S. Customs and Border Protection Data" (April 1, 2024); Letter from Howard Smith, Program Manager, AD/CVD Operations, Office IV to Nippon Steel Corporation, "Administrative Review of the Antidumping Duty Order on Non-Oriented Electrical Steel from Japan: Request for Information" (April 1, 2024).

6. From April 2024 through March 2025, NSC submitted timely responses to the Department's AD questionnaire and multiple supplemental questionnaires.

7. On April 11, 2025, the Department published its *Preliminary Results*. *See Non-Oriented Electrical Steel from Japan: Preliminary Results of Antidumping Duty Administrative Review*; 2022–2023, 90 Fed. Reg. 15447 (Dep't of Commerce April 11, 2025) ("*Preliminary Results*"), and accompanying "Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Non-Oriented Electrical Steel from Japan; 2022-2023" (April 7, 2025) ("Prelim Decision Memo") and "Preliminary Analysis Memorandum" (April 7, 2025) ("Prelim Analysis Memo").

8. The Department preliminarily treated NSC as affiliated with certain trading companies that NSC had identified as unaffiliated trading companies in its responses to the Department's questionnaires. *See* Prelim Decision Memo at 4. NSC had identified these trading

companies as unaffiliated because, *inter alia*, NSC maintained no control over, agency agreement with, or ownership interest in these trading companies (hereinafter, "unaffiliated trading companies"). The Department stated that this affiliation finding was based on "information on the record {that} indicates that a principal-agent relationship existed between NSC and the trading companies during the POR" and therefore NSC and the unaffiliated trading companies were affiliated pursuant to 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b)(3). Prelim Decision Memo at 4. Specifically, the Department applied a multi-factor test to analyze the principal-agent relationship and determined that "the record shows that the reportedly unaffiliated trading companies acted to benefit NSC and facilitate its sales" and that "the principal, NSC, has the right to control the conduct of its agents, the trading companies." Prelim Analysis Memo at 5.

9. The Department further stated that it did not have access to the required downstream sales information from these trading companies. *See* Prelim Decision Memo at 6-8. Moreover, the Department stated it was "relying on total facts otherwise available" and applying an adverse inference under 19 U.S.C. § 1677e(b) because "NSC failed to cooperate to the best of its ability in obtaining downstream sales information" from the unaffiliated trading companies. Prelim Decision Memo at 8-10. As a result, the Department assigned NSC a preliminary dumping margin based on total adverse facts available ("AFA") of 204.79 percent. *See* Prelim Decision Memo at 10-11; *Preliminary Results*, 90 Fed. Reg. at 15448.

10. On May 9, 2025, Plaintiff submitted its administrative case brief, in which Plaintiff argued that the Department, *inter alia*: (i) improperly concluded that the unaffiliated trading companies were agents or affiliates of NSC; (ii) improperly applied AFA with respect to the downstream sales by the unaffiliated trading companies; and (iii) erred by applying total

4

AFA rather than partial AFA if it still believes that AFA is warranted. Domestic interested parties submitted rebuttal briefs on May 19, 2025.

11. On May 12, 2025, Plaintiff requested a hearing. The Department held a public hearing on September 30, 2025, in which NSC participated.

12. On December 19, 2025, the Department published its *Final Results*. In the *Final Results*, the Department continued to treat NSC as affiliated with the unaffiliated trading companies under a principal-agent theory applied pursuant to 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b)(3), and the Department's multi-factor framework used to evaluate principal-agent relationships. *See* Final Decision Memo at 6-13. In the Department's view, *inter alia*, the evidence on the record "demonstrates that NSC has the right to control the conduct of the trading companies at issue with respect to important aspects of the sale of NOES to the end customer, namely the FOB prices of the NOES." Final Decision Memo at 9.

13. As in the *Preliminary Results*, the Department continued to use adverse inferences in selecting from the facts otherwise available for the downstream sales data from NSC's unaffiliated trading companies to calculate NSC's dumping margin. *See* Final Decision Memo at 17-22. However, rather than continuing the preliminary approach of applying total AFA, the Department applied partial AFA in the *Final Results*. *See* Final Decision Memo at 23-25. Specifically, the Department stated that it was "more appropriate to limit the application of AFA to the missing home and U.S. market sales data" rather than apply "total AFA to all sales." Final Decision Memo at 23 (emphasis omitted). The Department's application of partial AFA included NSC's U.S. sales even though the unaffiliated U.S. trading company at issue submitted a U.S. sales database in response to the Department's request. The Department treated those U.S. sales data as unusable because "the lack of {a} narrative response to section C of the

5

questionnaire renders the downstream U.S. sales database … so incomplete that it cannot serve as a reliable basis" for the Department's determination or for issuing a supplemental questionnaire, noting that the requirements of 19 U.S.C. §§ 1677m(d) and (e) had not been met. Final Decision Memo at 18.

14. In describing its partial AFA methodology, the Department stated that it made "adverse adjustments" to the sales data "reflecting NSC's sales to trading companies for which we lack the trading companies' sales to downstream customers." Final Decision Memo at 23. For home market sales, the Department stated that it applied the highest home market gross unit price corresponding to the control number ("CONNUM") that accounted for the largest quantity of home market sales. *See* Final Decision Memo at 23. For U.S. sales, the Department stated that "all NSC's U.S. sales involve a principal-agent relationship that require the submission of downstream sales," and it identified the lowest gross unit price among NSC's reported U.S. sales and applied that value to all U.S. sales. Final Decision Memo at 23-24. Based on this methodology, the Department calculated a weighted-average dumping margin of 47.80 percent for NSC in the *Final Results*.

## V.     STATEMENT OF CLAIMS

**Count 1:     The Department's Finding That NSC Is Affiliated With the Unaffiliated Trading Companies Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance With Law**

15. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 14.

16. In the *Final Results*, the Department continued to find that NSC is affiliated with the unaffiliated trading companies by way of a principal-agent relationship and relied on that finding to require downstream resale information from the unaffiliated trading companies for its home market and U.S. sales analyses. *See* Final Decision Memo at 6-14.

17. Affiliation may be found under 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b)(3) based on evidence that one person "controls" another, meaning that one person is "legally or operationally in a position to exercise restraint or direction over" another. In the *Final Results*, the Department found NSC had control over its unaffiliated trading companies based on a principal-agent relationship, and stated that there is "no bright line test" for a principal-agent relationship but rather such relationship may be found based on an evaluation of multiple factors. Final Decision Memo at 6-7. The Department nevertheless was required to apply its multi-factor approach in a manner that satisfies the statutory and regulatory standards for "control" and to provide a reasoned explanation, supported by substantial evidence, showing why the specific record facts establish that NSC was legally or operationally in a position to exercise restraint or direction over the unaffiliated trading companies.

18. The Department's affiliation finding is not supported by substantial evidence and is not otherwise in accordance with law because, on this record, the Department did not reasonably explain how the facts in their entirety establish that NSC was legally or operationally in a position to exercise restraint or direction over the unaffiliated trading companies within the meaning of 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b)(3). *See* Final Decision Memo at 6-13.

19. Because the Department's finding that NSC is affiliated with the unaffiliated trading companies is unsupported by substantial evidence or otherwise not in accordance with law, the Department's downstream sales reporting demands predicated on that finding were unlawful, and the Department's resulting reliance on facts otherwise available and partial AFA premised on missing downstream third-party resale data was also unlawful. *See* Final Decision Memo at 13-14, 18-24.

20. For these reasons, the Department's affiliation determination under 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b)(3) is not supported by substantial evidence and is not otherwise in accordance with law.

**Count 2:   The Department's Use of AFA, as Opposed to Neutral Facts Available, Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance With Law**

21. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 14.

22. The application of facts otherwise available and adverse inferences is governed by 19 U.S.C. §§ 1677e(a) and (b), respectively. Section 1677e(a) authorizes the use of facts otherwise available where necessary information is not on the record, or if an interested party or any other person withholds requested information, fails to provide requested information by the requested deadline or in the requested form and manner, significantly impedes a proceeding, or provides information that cannot be verified. Section 1677e(b) permits the use of adverse inferences (i.e., AFA) only if the Department "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information."

23. The Department unlawfully applied AFA with respect to the unreported downstream resale information from the unaffiliated trading companies because: (i) the missing information consisted of downstream resale data maintained by the unaffiliated trading companies and the record does not support attributing non-production of that third-party information to the Department as a failure of NSC to cooperate; and (ii) the record does not support the Department's conclusion that NSC failed to act to the best of its ability to obtain and submit the requested information from the unaffiliated trading companies.

24. For these reasons, the Department's application of AFA under 19 U.S.C. § 1677e(b) is not supported by substantial evidence and is not otherwise in accordance with law.

8

**Count 3:     The Department's Use of AFA With Respect to NSC's U.S. Sales Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance With Law**

25.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 14.

26.     Where the Department determines that submitted information does not comply with a request, 19 U.S.C. § 1677m(d) requires the Department to inform the submitter of the deficiency and provide a meaningful opportunity to remedy or explain the deficiency before disregarding the information and applying AFA. Furthermore, 19 U.S.C. § 1677m(e) requires the Department to use submitted information that may not meet all applicable requirements if it is timely submitted, verifiable, reliable, provided pursuant to the best of the respondent's ability, and usable.

27.     In the *Final Results*, the Department disregarded the downstream U.S. sales information submitted by the U.S. trading company at issue and applied partial AFA in respect of NSC's U.S. sales by assigning the lowest U.S. gross unit price to all of NSC's U.S. sales. *See* Final Decision Memo at 23-24; Final Analysis Memo at 2-3. The Department's treatment of the U.S. trading company's downstream sales as unusable and its resort to AFA in respect of NSC's U.S. sales violated 19 U.S.C. § 1677m(d) because, if there were a deficiency in the sales information provided by NSC's U.S. trading company, the Department did not provide the required notice of deficiency and meaningful opportunity to remedy or explain the deficiency before applying adverse inferences; and it violated 19 U.S.C. § 1677m(e) because all the conditions of that statute were satisfied in respect of the U.S. sales database provided by NSC's U.S. trading company. *See* Final Decision Memo at 25.

28. For these reasons, the Department's application of partial AFA with regard to NSC's U.S. sales is not supported by substantial evidence and is not otherwise in accordance with the law.

**Count 4:    The Department's Treatment of "TRADE" and "RESELL" Sales Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance With Law**

29. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 14.

30. In the *Final Results*, the Department's margin program excluded NSC's home market sales transactions coded "RESELL" and retained NSC's home market sales transactions coded "TRADE." *See* Final Analysis Memo at 2-3. The reported "TRADE" transactions reflect NSC's sales to unaffiliated trading companies that the Department has nonetheless found to be affiliated with NSC pursuant to its principal-agent theory, while the reported "RESELL" transactions reflect sales made initially to NSC's unaffiliated trading companies that were later purchased by an affiliated trading company and resold primarily to unaffiliated customers. If the Department maintains its principal-agent finding, the *Final Results* do not explain why the Department included "TRADE" transactions (reflecting sales that NSC made to entities the Department deemed to be affiliated) in its margin calculations while omitting "RESELL" transactions (reflecting downstream resales primarily to unaffiliated customers), in light of the Department's regulations governing sales through affiliated parties under 19 C.F.R. § 351.403. The Department's inclusion of "TRADE" transactions and exclusion of "RESELL" transactions results in an improper margin calculation, including the application of partial AFA to an incorrect home market sales universe.

31. For these reasons, the Department's treatment of "TRADE" and "RESELL" sales in the context of its decision that NSC's unaffiliated trading companies are affiliated agents of NSC is not supported by substantial evidence and is not otherwise in accordance with law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(1) Sustaining its complaint herein;

(2) Holding that the Department's determination was not supported by substantial evidence on the record and is otherwise not in accordance with law;

(3) Remanding this administrative review to the Department with instructions to:

　(A) Reconsider its determination under 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b)(3) that NSC and its unaffiliated trading companies are affiliated, and address record evidence that detracts from any finding that NSC has control over its unaffiliated trading companies;

　(B) Absent a lawful finding supported by substantial evidence that NSC failed to act to the "best of its ability" under 19 U.S.C. § 1677e(b), apply only neutral facts available consistent with 19 U.S.C. § 1677e(a);

　(C) Comply with 19 U.S.C. §§ 1677m(d) and (e) before disregarding information based on alleged deficiencies and applying adverse inferences in respect of NSC's U.S. sales; and

　(D) Reconsider and correct the sales universe considered in the *Final Results* by excluding NSC's home market sales transactions coded "TRADE" and retaining NSC's applicable home market sales transactions coded "RESELL" if the Department maintains its determination that NSC's unaffiliated trading companies are affiliated agents of NSC.

(4)     Awarding such other and further relief as this Court may deem appropriate.

                                              Respectfully submitted,

                                              Shawn M. Higgins
                                              Rajib Pal
                                              Ashlande Gelin
                                              Lloyd Lyall
                                              Danielle V. Cossey

                                              Sidley Austin LLP
                                              1501 K Street N.W.
                                              Washington, D.C. 20005
                                              (202) 736-8000

                                              Counsel to Nippon Steel Corporation

                                              February 19, 2026

**CERTIFICATE OF SERVICE**

      I hereby certify that copies of the attached documents are being served by certified mail, return receipt requested, on February 19, 2026, addressed to the following parties:

**On behalf of the United States:**
Attorney-in-Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza – Room 346
Civil Division
New York, NY 10278

General Counsel
Department of Commerce
14th & Constitution Avenue, N.W.
Washington, DC 20230

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street NW, Room 12124
Washington, DC 20530

**On behalf of Cleveland-Cliffs Inc.:**
Stephen P. Vaughn
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006

**On behalf of United States Steel Corporation:**
Thomas M. Beline
Cassidy Levy Kent (USA) LLP
900 19th Street, NW
Suite 400
Washington, DC 20006

_____
Shawn M. Higgins